# EXHIBIT 69

  

19 November 2020

**BY EMAIL**

Secretariat of the ICC International Court of Arbitration
33-43 avenue du Président Wilson
75116 Paris
France
ica1@iccwbo.org

Re:   **ICC Case No. 20910/ASM/JPA (C-20911/ASM) – (1) Grupo Unidos por el Canal, S.A. ("GUPC" or "Claimant 1"), (2) Sacyr, S.A., (3) Webuild, S.p.A, (4) Jan De Nul, N.V. ("Claimants") v. Autoridad del Canal de Panamá ("Respondent" or "ACP") (together, the "Parties")**

Dear Mr. Argentato and Ms. Pinton,

Claimants write with respect to the additional disclosures made by the members of the Tribunal on 29 and 30 October, and 2 and 3 November 2020, following Claimants' submission of a challenge to the Tribunal on 28 October 2020.[1]  As anticipated, Claimants hereby submit observations on these new disclosures, and take this opportunity to address as appropriate the comments submitted by the Tribunal members on the challenge on 12 November 2020.

I.    BACKGROUND TO CLAIMANTS' ADDITIONAL OBSERVATIONS

1.    Claimants refer to their challenge of 28 October 2020 for a full elaboration on the bases for their challenge.

2.    By way of background, this challenge is based on disclosures recently made by the members of the Tribunal at Claimants' request.  These disclosures have revealed that all three members of the Tribunal have withheld important connections between themselves, the arbitrators of the previous Cofferdam Tribunal, and counsel for Respondent.  These undisclosed connections are highly problematic; they call into question the arbitrators' independence in the eyes of Claimants and give rise to reasonable doubts as to their impartiality.

3.    To recall, on 26 October 2020 Claimants had to send further questions to each of the members of the Tribunal, aimed at obtaining full answers to their Disclosure Requests, given the great reluctance displayed by the arbitrators to make complete disclosures.[2]

4.    On 28 October 2020, Mr. Gunter sent new clarification requests to Claimants concerning the involvement of the lawyers at his law firm as co-counsel or arbitrator in unrelated proceedings

---

[1]    Pursuant to Article 14 of the ICC Rules, Claimants submitted a challenge to the Tribunal in ICC Case No. 20910/ASM/JPA (C-20911/ASM) ("**Panama 1**") on 28 October 2020.  On the same day, Claimants also submitted a challenge in the related ICC Case No. 22466/ASM/JPA (C-22967/JPA) ("**Panama 2**") (together with Panama 1, the "**Arbitrations**").  Both challenges are based on the same grounds.  *See* Letter from Claimants to the ICC Secretariat (20910) dated 28 October 2020; Letter from Claimants to the ICC Secretariat (22466) dated 28 October 2020.

[2]    Email from Claimants to Pierre-Yves Gunter dated 26 October 2020; Email from Claimants to Robert Gaitskell QC dated 26 October 2020; Email from Claimants to Claus von Wobeser dated 26 October 2020.

1

  

with any of the Parties' Counsel since 2013.[3]  In particular, Mr. Gunter asked Claimants to point at provisions of the IBA Guidelines on Conflicts of Interest in Arbitration specifically dealing with this issue, which Claimants consider was an improper attempt at limiting his disclosure obligations to the non-exhaustive lists provided in the IBA Guidelines.

5.   On 29 and 30 October 2020, the members of the Tribunal provided (once more) partial responses to Claimants' additional questions.[4]  As detailed below, these responses reinforced Claimants' concerns as to the impartiality and independence of the arbitrators.

6.   On 2 November 2020, Mr. Gunter made additional disclosures in response to Respondent's request.[5]

7.   On 2 November 2020, Claimants answered Mr. Gunter's clarification requests, highlighting the broad scope of arbitrators' disclosure obligations under the ICC Rules, and that the lists provided in the ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration ("**ICC Note**") and the IBA Guidelines are non-exhaustive.[6]

8.   On 3 November 2020, Mr. Gunter wrote to Claimants, notably stating that "an arbitrator or prospective arbitrator cannot be expected to provide information as extensive as some of the information contained in Claimants' request of 15 October 2020 and follow-up communications/clarifications."[7]   On that day, Dr. Gaitskell also provided some clarifications.[8]

9.   At the end of this process, having adopted a piecemeal approach to disclosing relevant information, which should have been disclosed spontaneously at the time the relevant circumstances occurred, Mr. Gunter and Dr. Gaitskell maintained their refusal to disclose certain information in relation to connections that they or their law firm/chambers have with other involved arbitrators or parties' counsel.

10.   In light of the above, Claimants' position is that, despite repeated requests, Mr. Gunter and Dr. Gaitskell have not fully complied with their disclosure obligations.

11.   On 5 November 2020, the ICC Secretariat invited Respondent and the members of the Tribunal to comment on Claimants' challenge by 16 November 2020.[9]

12.   On 10 November 2020, Respondent asked for an extension to submit comments on Claimants' challenge and on the same day the ICC Secretariat granted Respondent until 20 November 2020 to do so.[10]

13.   On 12 November 2020, the members of the Tribunal submitted their comments on Claimants' challenge,[11] which are addressed below as necessary.

---

[3]   Email from Pierre-Yves Gunter to the Parties dated 28 October 2020.

[4]   Email from Pierre-Yves Gunter to the Parties dated 29 October 2020; Email from Robert Gaitskell QC to the Parties dated 29 October 2020; Email from Claus von Wobeser to the Parties dated 29 October 2020; Email from Pierre-Yves Gunter to the Parties dated 30 October 2020.

[5]   Email from Pierre-Yves Gunter to Respondent dated 2 November 2020.

[6]   Email from Claimants to the Pierre-Yves Gunter dated 2 November 2020.

[7]   Email from Pierre-Yves Gunter to Claimants dated 3 November 2020.

[8]   Email from Robert Gaitskell QC to Claimants dated 3 November 2020.

[9]   Email from the ICC Secretariat to the Tribunal and the Parties dated 5 November 2020.

[10]   Email from Respondent to the ICC Secretariat dated 10 November 2020; Email from the ICC Secretariat to Respondent dated 10 November 2020.

2

  

II.   **OBSERVATIONS ON THE ADDITIONAL DISCLOSURES AND COMMENTS BY THE ARBITRATORS**

A.   **STANDARDS APPLICABLE UNDER THE ICC RULES**

14.   Claimants refer to their challenge of 28 October 2020 for a full elaboration on the standard of impartiality and independence and the disclosure requirements under the ICC Rules.[12] Claimants stress again that, under the ICC Rules, arbitrators have to disclose "facts or circumstances which might be of such a nature as to call into question the arbitrator's independence <u>in the eyes of the parties</u>, as well as any circumstances that could give rise to reasonable doubts as to the arbitrator's impartiality".[13]  The ICC Note also provides a non-exhaustive list of circumstances that arbitrators must consider when assessing whether to make a disclosure,[14] and specifies that "[f]or the scope of disclosures, an arbitrator will be considered as bearing the identity of his or her law firm".[15]

15.   In an attempt to justify their failure to disclose information of fundamental importance, Mr. Gunter and Dr. Gaitskell have taken the position that information of such nature was not expressly listed in the IBA Guidelines.[16]  The spirit of the ICC Rules is not, however, that an arbitrator should disclose as little information as possible, and do so only on the basis of the examples expressly included in lists which are described as <u>non-exhaustive</u>.  Rather, the ICC Rules require arbitrators to ask themselves at every stage of the proceedings whether they should disclose information that give rise to reasonable doubts <u>in the eyes of the parties</u>, even if they do not personally consider that their independence or impartiality is affected by such circumstances.  The ICC Note similarly provides that "[t]he parties have a <u>legitimate interest in being fully informed</u> of all facts or circumstances that may be relevant in their view in order to be satisfied that an arbitrator or prospective arbitrator is and remains independent and impartial or, if they so wish, to explore the matter further and/or take the initiatives contemplated by the Rules."[17]  The ICC Note is also clear that "[a]ny doubt must be resolved in favour of disclosure."[18]

B.   **STANDARDS APPLICABLE UNDER THE LAW OF THE SEAT**

16.   Claimants refer to their challenge of 28 October 2020 for a full elaboration on the relevance of, and the standard applicable under, the law of the seat, *i.e.*, the U.S. Federal Arbitration Act ("**FAA**")[19] in particular as applied by the U.S. Court of Appeals for the Eleventh Circuit.[20]  Claimants recall that lack of impartiality is a cause of annulment under the FAA,[21] and that, an

---

[11]   Letter from Pierre-Yves Gunter to the ICC Secretariat dated 12 November 2020; Letter from Robert Gaitskell QC to the ICC Secretariat dated 12 November 2020; Letter from Claus von Wobeser to the ICC Secretariat dated 12 November 2020.

[12]   Letter from Claimants to the ICC Secretariat dated 28 October 2020, p. 5 [pp. 5-8], paras. 29-42.

[13]   ICC Rules, Art. 11(2) (emphasis added).

[14]   ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration, p. 5, para. 23.

[15]   ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration, p. 6, para. 28.

[16]   Letter from Pierre-Yves Gunter to the ICC Secretariat dated 12 November 2020, p. 7 [pp. 7-8], paras. 49, 51; Letter from Robert Gaitskell QC to the ICC Secretariat dated 12 November 2020, p. 3.

[17]   ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration, p. 5, para. 20 (emphasis added).

[18]   ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration, p. 5, para. 21.

[19]   The Conditions of Contract and the Joint and Several Guarantee also confirm that the FAA applies.  *See* Conditions of Contract dated February 2009, p. 140 [p. 127], Sub-Clause 20.6(f); Joint and Several Guarantee in Respect of the Third Set of Locks Contract dated 31 May 2010, p. 8, Sub-Clause 9.2(f).

[20]   Letter from Claimants to the ICC Secretariat dated 28 October 2020, p. 9, paras. 43-47.

[21]   Pursuant to Section 10(a)(2) of the FAA, an award may be vacated "where there is evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2).

3





award may be vacated if an arbitrator fails to disclose any dealings that might create an "impression of possible bias".[22]  Importantly, under the jurisprudence of the Eleventh Circuit, an award may be vacated where "(1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists."[23]  This standard, Claimants submit, is even higher than the standard currently set out in the ICC Note.

17.     In addition, in light of the members of the Tribunal's insistence that they were justified in not disclosing the information recently disclosed, Claimants emphasize that, just like under the ICC Rules, U.S. law provides that any doubt should be resolved in favor of disclosure.  The U.S. District Court for the Southern District of Florida thus recently held that "the irreducible minimum requirement ... is full disclosure" and that where there "is any doubt as to whether circumstances of which the arbitrator is aware might create an impression of partiality, [the arbitrator] should disclose those circumstances."[24]  Moreover, the position under U.S. law is that arbitrators should conduct a reasonable investigation into potential conflicts.[25]  Under the jurisprudence of the Second Circuit, "a failure to either investigate or disclose an intention not to investigate is indicative of evident partiality [under Section 10(a)(2) of the FAA]."[26]

**C.     THE ADDITIONAL DISCLOSURES AND COMMENTS RECEIVED FROM THE MEMBERS OF THE TRIBUNAL FURTHER CONFIRM THAT THEY MUST BE REMOVED**

18.     As explained in Claimants' challenge of 28 October 2020 and further elaborated below, the members of the Tribunal's disclosures, together with the information recently gathered by Claimants following targeted searches, call into question the independence of the Tribunal members in the eyes of Claimants and give rise to reasonable doubts as to the Tribunal members' impartiality and freedom of judgment.

19.     These doubts are further heightened by the fact that Mr. Gunter (president) and Dr. Gaitskell (arbitrator appointed by Respondent) have refused to carry out a full conflicts check, Dr. Gaitskell having even admitted that he never conducted any conflicts check at the level of his chambers.

20.     Claimants have thus lost all confidence in the independence and impartiality of the arbitrators, who therefore must be removed.

**1.     Mr. Gunter (president)**

21.     In response to Claimants' initial request, Mr. Gunter belatedly disclosed that he is sitting with Dr. Gaitskell in an unrelated, but apparently still ongoing, ICC case (No. 24400).  At first, Mr. Gunter did not explain the process that led to his and Dr. Gaitskell's nominations and appointment (despite Claimants' request).  At Claimants' repeated insistence, Mr. Gunter then disclosed that he was appointed president by Dr. Gaitskell and the other co-arbitrator, and was

---

[22]     *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149 (1968) (plurality opinion).

[23]     *Gianelli Money Purchase Plan & Trust v. ADM Investor Servs.*, 146 F.3d 1309, 1312 (11th Cir. 1998) (emphasis added); *Mendel v. Morgan Keegan & Co.*, 654 Fed. App'x 1001, 1003 (11th Cir. 2016).

[24]     *Metropolitan Delivery Corporation v. Teamsters Local Union*, 769, Not Reported in Fed. Supp., 2019 WL 3752245 (S.D. Fl. 2019) p. 3 [p. 6] ("the 'the irreducible minimum requirement ... is full disclosure.' Cont'l Ins. Co. v. Williams, 1986 WL 20915, at *4 (S.D. Fla. Sept. 17, 1986), aff'd, 832 F.2d 1265 (11th Cir. 1987) (emphasis added). This means that where there 'is any doubt as to whether circumstances of which the arbitrator is aware might create an impression of partiality, [the arbitrator] should disclose those circumstances.' Fed. Vending, Inc. v. Steak & Ale of Fla., Inc., 71 F. Supp. 2d at 1249.").

[25]     Restatement on US Law of Int'l Commercial & Investor-State Arbitration (ALI, proposed final draft, 2019).

[26]     *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi*, A.S., 492 F.3d 132, 138 (2d Cir. 2007).

EMEA 129264176

  

later confirmed by the ICC Court on 1 August 2019.[27]  Mr. Gunter and Dr. Gaitskell have thus been sitting together on another tribunal, without Mr. von Wobeser, during the deliberations of the Tribunal in Panama 1 (and after the start of the Panama 2 arbitration).

22.    As stated in Claimants' challenge of 28 October 2020, arbitrators appointing each other in unrelated lucrative cases is a matter of great concern to parties and requires disclosure.[28]  While this may once have been tolerated, the arbitration community's sensitivity in this respect has evolved.[29]  This is particularly the case when the arbitrations in questions are a series of high-profile cases presenting common issues of fact and law, as in the present case. Claimants' legitimate concerns are two-fold: (i) the fact that Mr. Gunter owes his appointment in another case to Dr. Gaitskell creates a connection and a situation of dependence between them, which is likely improperly to influence the deliberative process in the Arbitrations; and (ii) the fact that Mr. Gunter and Dr. Gaitskell sat together in another case throughout the duration of deliberations in Panama 1 means that they had opportunities to discuss the issues at stake in the Arbitrations in the absence of Mr. von Wobeser, thus improperly influencing the deliberations.

23.    In addition, the information obtained (including from Mr. Gunter himself, following several rounds of exchanges) shows that Mr. Gunter sat on three occasions with the president of the Cofferdam Tribunal, without disclosing it to the Parties:

•    Following Claimants' Disclosure Requests, Mr. Gunter disclosed that he is sitting with Prof. Hanotiau, the president of the Cofferdam Tribunal, in an unrelated, but still ongoing, LCIA case.  After a further question from Claimants, Mr. Gunter clarified that he was in fact appointed president in that case by Prof. Hanotiau and the other co-arbitrator on 22 July 2017,[30] after the start of the Arbitrations.  These proceedings are still ongoing.

•    Claimants' own research showed that Mr. Gunter also acted as co-arbitrator on a panel where Prof. Hanotiau was president nominated by the co-arbitrators (including Mr. Gunter), which Mr. Gunter failed to disclose, even following Claimants' Disclosure Requests.[31]  At Claimants' insistence, Mr. Gunter finally confirmed the existence of this arbitration, and clarified that he and his co-arbitrator appointed Prof. Hanotiau as president in November 2016.[32]  The award was issued on 6 June 2019.  This means that this arbitration effectively ran in parallel with the Arbitrations.

•    Finally, Mr. Gunter belatedly disclosed that he had also sat with Prof. Hanotiau in an ad hoc arbitration.[33]  Mr. Gunter and his co-arbitrator appointed Prof. Hanotiau as president on 3 October 2013.  The award was rendered on 7 September 2015, after Mr. Gunter's nomination as President by the Parties in Panama 1 but before his nomination in Panama 2.

---

[27]    Email from Pierre-Yves Gunter to the Parties dated 29 October 2020, p. 9 [p. 4].  Contrary to what Mr. Gunter suggests in his observations on the challenge, he has not merely been sitting with Dr. Gaitskell.  Rather, Dr. Gaitskell took an active part in Mr. Gunter's nomination as president of the tribunal in this ICC Case.  *See* Letter from Pierre-Yves Gunter to the ICC Secretariat dated 12 November 2020, p. 7 [pp. 7-8], para. 51.

[28]    Letter from Claimants to the ICC Secretariat dated 28 October 2020, p. 6 [pp. 6-7], paras. 32-38.

[29]    Thomas Clay, "Le coarbitre", in *Mélanges en l'honneur du Professeur Pierre Mayer* (Lextenso, 2015) at 133 (Claimants' translation).

[30]    Email from Pierre-Yves Gunter to the Parties dated 29 October 2020, p. 10 [p. 5].

[31]    ICC website - Information on ICC Case ID 00171.

[32]    Email from Pierre-Yves Gunter to the Parties dated 29 October 2020, p. 10 [p. 5].

[33]    Email from Pierre-Yves Gunter to the Parties dated 29 October 2020, p. 10 [p. 5].

5

  

24. Thus, Mr. Gunter and Prof. Hanotiau have been cross-appointing each other as president on three different tribunals since 2013.  Mr. Gunter has been almost continuously sitting on tribunals with Prof. Hanotiau, and Mr. Gunter and Prof. Hanotiau must have repeatedly spent time together since 2013.

25. In their challenge of 28 October 2020, Claimants explained in detail why the above circumstances are highly problematic, and that they would never have accepted to consider Mr. Gunter as president nominee in the Arbitrations had they been aware of them.[34] Mr. Gunter's late contention that he "never shared information with Prof. Hanotiau about [their] respective cases relating to the Panama Canal"[35] is plainly insufficient, and in any event does not change the fact that this information should have been disclosed at the relevant time. The fact that the above-described circumstances are not mentioned in the IBA Guidelines does not absolve Mr. Gunter from his disclosure obligations under the ICC Rules and applicable U.S. precedents.  In addition, Mr. Gunter's further attempt to justify his lack of disclosure concerning Prof. Hanotiau by the fact that Claimants had accepted that Dr. Gaitskell, co-arbitrator in Panama 1 and 2, "was also sitting in another panel which had to deal with a dispute relating to the Panama Canal"[36] misses the point.  Claimants did not oppose Dr. Gaitskell's appointment in Panama 1 and 2, because they expected that he would act with independence and impartiality on the basis of his Statement of Acceptance, Availability, Impartiality and Independence (which unfortunately proved not to be the case).  Claimants never accepted that it would be proper for Dr. Gaitskell or Prof. Hanotiau to spend time sitting alone with the President of the Tribunal in Panama 1 and 2.

26. Finally, Claimants explained in their challenge that Mr. Gunter's initial reluctance to investigate and disclose potential connections of other members of his law firm further undermined his independence and impartiality in the eyes of Claimants.[37]  Although Mr. Gunter finally agreed to provide information about the involvement of members of his firm in arbitration matters, Mr. Gunter refused to disclose similar information regarding non-arbitration matters.[38]  Mr. Gunter merely stated that, to his knowledge (and it is not clear whether Mr. Gunter actually investigated the matter), "for the period 2013 until today (and without admitting the relevance of that period) [there were] no 'matters of any nature generating revenues for [his] Firm' … which are such as to call into question [his] independence in the eyes of the parties or to give rise to reasonable doubts as to [his] impartiality."[39]

27. Mr. Gunter's recent disclosures therefore show that, while the Arbitrations were already ongoing:

- he has been sitting with Prof. Hanotiau on at least three arbitrations (at least once appointed as president by Prof. Hanotiau);

- he has been nominated as president by Dr. Gaitskell on at least one (still ongoing) arbitration; and

---

[34] Letter from Claimants to the ICC Secretariat dated 28 October 2020, p. 10 [pp. 10-11], paras. 52-54.

[35] Letter from Mr. Gunter to the ICC Secretariat dated 12 November 2020, p. 7, para. 48.

[36] Letter from Mr. Gunter to the ICC Secretariat dated 12 November 2020, p. 7, para. 49 ("I shall add that since Claimants had accepted a situation where one of my co-arbitrator in Panama 1 and Panama 2, Dr Robert Gaitskell QC, was also sitting in another panel which had to deal with a dispute relating to the Panama Canal, I had even less a reason to believe that Claimants might be concerned with me sitting with Prof. Hanotiau in arbitration tribunals dealing with unrelated disputes involving different parties and different Counsel.").

[37] Letter from Claimants to the ICC Secretariat dated 28 October 2020, p. 11, para. 55.

[38] Email from Pierre-Yves Gunter to Claimants dated 3 November 2020.

[39] Email from Pierre-Yves Gunter to Claimants dated 3 November 2020.

6

  

- this occurred in a context where Prof. Hanotiau and Dr. Gaitskell sided to render the majority award in the previous Cofferdam arbitration, which denied Claimants' claim in what Claimants consider to be a poorly-reasoned and sub-standard award.

28. In light of the above, Claimants consider that Mr. Gunter's independence and impartiality in the present proceedings have been compromised and that he can no longer continue to serve in the Arbitrations.

### 2.    Dr. Gaitskell (appointed by Respondent)

29. The information obtained to date (including from Dr. Gaitskell himself) shows that Dr. Gaitskell failed to disclose facts and circumstances calling into question his independence and giving rise to reasonable doubts about his impartiality, and that he failed to carry out a proper conflict check at the level of his chambers (which to date he still refuses to do).

30. First, as explained above, Dr. Gaitskell has disclosed that he is sitting with Mr. Gunter on an unrelated and apparently still pending ICC case (No. 24400), and Dr. Gaitskell has now clarified, upon Claimants' insistence, that he nominated Mr. Gunter as president of this tribunal. Unbeknownst to Claimants, Mr. Gunter and Dr. Gaitskell have therefore been sitting together on that other tribunal since 1 August 2019,[40] including during the deliberations of the Tribunal in Panama 1. Claimants already explained why this appointment is problematic, and Claimants would never have accepted it, had they been informed at the relevant time.

31. Second, Dr. Gaitskell has failed to provide a complete answer to Claimants' disclosure request concerning any personal or professional relationship between him and members of the law firms and chambers (including Atkin Chambers) representing the Parties in this arbitration, including but not limited to whether he serves or has served as arbitrator with, or has been appointed by, members of the law firms and chambers representing the Parties in this arbitration. Dr. Gaitskell provided limited information in that regard on 24 October 2020,[41] which prompted Claimants to insist on full disclosure on 26 October 2020.[42] However, on 29 October 2020, Dr. Gaitskell merely answered Claimants' request for clarification concerning some of the information unveiled by Claimants, and failed to confirm whether the information provided was complete.[43] Given the size of the law firms and chambers involved (Keating and Atkin), in particular on Respondent's side, Claimants have very serious doubts that Dr. Gaitskell has disclosed all the connections with himself (or other members of his chambers) and law firms or chambers representing the Parties in this arbitration.

32. In response to Claimants' Disclosure Requests, Dr. Gaitskell disclosed that Mr. Manus McMullan QC of Atkin Chambers (counsel for Respondent) is currently representing a party in an ICC arbitration in which Dr. Gaitskell is an arbitrator.[44] As noted by Claimants, a recent search conducted by Claimants in the ICC database on the Internet shows that Dr. Gaitskell was also nominated as president in at least two ICC cases by his co-arbitrators, where one of the co-arbitrators was Andrew White QC, a member of Atkin Chambers.[45] Dr. Gaitskell's comment that Andrew White QC is "in a different set of chambers from [him]" misses the

---

[40]    Email from Robert Gaitskell to Claimants dated 3 November 2020; Email from Pierre-Yves Gunter to the Parties dated 29 October 2020, p. 4.

[41]    Email from Robert Gaitskell QC to the Parties dated 24 October 2020.

[42]    Email from Claimants to Robert Gaitskell QC dated 26 October 2020.

[43]    Email from Robert Gaitskell QC to the Parties dated 29 October 2020.

[44]    Dr. Gaitskell has also now clarified that he was appointed president by the co-arbitrators. *See* Email from Robert Gaitskell QC to the Parties dated 29 October 2020.

[45]    ICC website - Information on ICC Case ID 00778; ICC website - Information on ICC Case ID 00729. That White & Case appointed Andrew White QC in these arbitrations is irrelevant to the issue here.

7

  

point.[46]  The issue is that Andrew White QC belongs to the same chambers as Mr. Manus McMullan QC, who is lead counsel for Respondent.  The ICC database only shows a limited number of cases.  Dr. Gaitskell, who is a busy arbitrator, may have been appointed by or have appointed other members of Atkin Chambers in a number of additional arbitrations (ICC or otherwise).  Claimants have a legitimate interest in being informed of any such circumstances. Dr. Gaitskell's lack of transparency in that regard is yet another cause of concern for Claimants.

33.  Third, with respect to the relationship between members of Dr. Gaitskell's chambers and the Parties' Counsel in the Arbitrations, Dr. Gaitskell has also taken the position that he has "no knowledge of what other members of Keating Chambers do professionally" and has "no way of knowing" it.[47]  This means that, when Dr. Gaitskell filled in his Statement of Acceptance, Availability, Impartiality and Independence in Panama 1 and Panama 2, he did not conduct any conflict checks extending to the members of his barristers' chambers, and that Dr. Gaitskell still has not done so.  As Claimants explained in their challenge,[48] Dr. Gaitskell's position is inconsistent with the evolution of the law and practice on disclosure.  In particular, Claimants respectfully do not accept that Dr. Gaitskell has "no way of knowing" what his colleagues at Keating Chambers "do professionally".  Indeed, it is well known that clerks at chambers are able to gather the information needed for a conflict search, and indeed a number of chambers do this routinely for arbitration matters, precisely because of the evolution of the law and practice of international arbitration.  The England & Wales Bar Council itself now encourages arbitrators to disclose relationships with another arbitrator or counsel who is a member of the same barristers' chambers.[49]

34.  Dr. Gaitskell's continued insistence that a barrister is forbidden by the Bar rules to disclose to another member of his chambers whether he or she has acted for a particular party or firm is unsubstantiated and does not withstand scrutiny.[50]  For the avoidance of doubt, Claimants never asked Dr. Gaitskell to disclose the identity of the parties to other, unrelated proceedings in which he is acting as counsel or arbitrator.  What Claimants consider relevant is whether Dr. Gaitskell and other members of his chambers have been appointed by (or have appointed) members of Atkin Chambers (counsel for Respondent).  Dr. Gaitskell's refusal to even investigate the matter is in breach of his obligations (in particular under U.S. law), and suggests that such repeat cross-appointments are common.

35.  It is not acceptable for a barrister to abstain from conducting any sort of conflict check within his or her chambers.  Pushing Dr. Gaitskell's logic, one of the Parties' counsel could have appointed other members of Dr. Gaitskell's chambers several (even many) times within a short period of time, thus creating a flow of business between chambers, and Dr. Gaitskell would still have failed to disclose that information.  However, it can hardly be disputed that such circumstances would call into question Dr. Gaitskell's impartiality and independence in the eyes of the other party, especially if this party is not from the United Kingdom, as is the case with Claimants, and the arbitration is not seated in the United Kingdom.

---

[46]  *See* Letter from Robert Gaitskell QC to the ICC Secretariat dated 12 November 2020, p. 4, para. 7(c).

[47]  Email from Robert Gaitskell QC to the Parties dated 24 October 2020, p. 3 [p. 1].

[48]  Letter from Claimants to the ICC Secretariat dated 28 October 2020, p. 8, paras. 39-42.

[49]  Bar Council of England and Wales, Information Note regarding barristers in international arbitration dated 6 July 2015, p. 5, para. 15(d) ("[G]ood practice would dictate that in circumstances where a barrister comes to understand that he or she has been instructed in an arbitration where one or more of the members of the Tribunal are barristers in the same set of chambers, prompt disclosure ought to be made by those instructing the barrister advocate to the legal representatives of the other side. This will ensure as far as possible that the guidance set out in the IBA Guidelines on Conflicts of Interest in International Arbitration is followed (see further below). A failure to make prompt disclosure, could ultimately, lead to a challenge to the independence of the member(s) of the Tribunal in question.").

[50]  Email from Robert Gaitskell QC to the Parties dated 29 October 2020.

8

  

36.     In light of the above, Claimants consider that Dr. Gaitskell's independence and impartiality in the present proceedings have been compromised and that he can no longer continue to serve in the Arbitrations.

### 3.     Mr. von Wobeser (appointed by Claimants)

37.     In their challenge, Claimants explained that it would be proper to replace the entire Tribunal, including Mr. von Wobeser, since, having sat with Mr. Gunter and Dr. Gaitskell, Mr. von Wobeser's impartiality and independence was indirectly, but necessarily, affected by the above-described circumstances.   Mr. von Wobeser may not have known of all of the interrelationships between Mr. Gunter, Dr. Gaitskell and Prof. Hanotiau, but was most likely influenced by their views of the evidence and legal arguments.

38.     Claimants also explained that this conclusion is reinforced by the fact that, in response to Claimants' Disclosure Requests, Mr. von Wobeser disclosed that he has been sitting with Mr. Andrés Jana, Counsel for Respondent in the Arbitrations, in an unrelated ICSID case. Mr. von Wobeser has now clarified that, in that case, Mr. Jana accepted his appointment as arbitrator on 7 November 2018, Mr. von Wobeser accepted his appointment as arbitrator on 21 November 2018, and the president of the tribunal accepted his appointment on 18 July 2019.[51]

39.     That Mr. von Wobeser spent time sitting with counsel for Respondent, shortly before the oral closings in Panama 1, during the deliberations of Panama 1, and during the course of Panama 2, is a real cause of concern for Claimants, in particular since Mr. von Wobeser disclosed further involvement in a case in which Mr. Jana was also involved.[52]   Mr. von Wobeser's observation that this information is available on the ICSID website does not absolve him from his disclosure obligation, as parties cannot be expected to check repeatedly the websites of all major arbitral institutions to verify if an arbitrator has been appointed in cases creating a conflict of interest.   Rather, it is reasonable to expect that Mr. von Wobeser himself, having direct and immediate knowledge of his appointments and nominations, disclose them promptly to the parties.   Such is the spirit of the ICC Rules, ICC Note and IBA Guidelines.

40.     Taken together, these facts and circumstances call into question Mr. von Wobeser's independence in the eyes of Claimants and give rise to reasonable doubts as to his impartiality. Claimants consider that Mr. von Wobeser's independence and impartiality in the present proceedings have been compromised and that he can no longer continue to serve in the Arbitrations.

---

[51]     Email from Claus von Wobeser to the Parties dated 29 October 2020.

[52]     Mr. von Wobeser further disclosed that he is acting as president of an ICC tribunal in which Mayer Brown, counsel to Respondent in the Arbitrations, appears as counsel to the respondent, and that he is currently sitting with arbitrators who were also members of the tribunal in related ICC cases arising from the Project, although not Prof. Hanotiau or Dr. Gaitskell.   *See* Email from Claus von Wobeser to the Parties dated 24 October 2020.   Mr. von Wobeser acted the *Vieira v. Chile* case (ICSID Case No. ARB/04/7) in which Mr. Jana was counsel for the respondent, and in the *Highbury International v. Venezuela* case (ICSID Case No. ARB/11/1), in which Mr. Carlos Arrue Montenegro (now in-house counsel to Respondent) was counsel for respondent.   At first, Mr. von Wobeser had not disclosed the existence of these cases or the method of appointment.   Mr. von Wobeser has now provided clarifications on these cases.   *See* Email from Claus von Wobeser to the Parties dated 29 October 2020.   Finally, Claimants note that Mr. von Wobeser and Mr. Jana are, respectively, part of the *Comité Ejecutivo* and *Consejo Directivo* of ALARB (http://www.alarb.org/esp/asociacion.php).

  

D.    LETTER FROM THE CEOS OF SACYR S.A., WEBUILD SPA AND JAN DE NUL NV

41.    Claimants take this matter very seriously, given the significance of this case in both monetary and reputational terms.

42.    The CEOs of the Webuild, Sacyr and Jan De Nul (three repeat users of ICC dispute resolution services) have thus taken the extraordinary step to write personally to the President of the ICC Court to voice their concerns.[53]  For full transparency, this letter is enclosed as **Attachment 1**. As they have written, in high-stake arbitrations, "[u]sers cannot accept any risk that the outcome of a dispute of fundamental importance to them may have been influenced by improper considerations."[54]  They also point out that the practices belatedly disclosed by the arbitrators "undermine the users' confidence in the system", while "[m]embers of the business community turn to ICC arbitration precisely to avoid arrangements that give rise to suspicions and risks as to the arbitrators' independence and impartiality and freedom of judgment."[55]

43.    Claimants therefore trust that the ICC Court will scrutinize the arbitrators' behaviour in the Arbitration thoroughly, and conclude that, in light of their belated disclosures and failure to make full disclosure, in violation of the spirit and letter of the ICC Rules and the law of the seat of arbitration, all three arbitrators must be disqualified and replaced by a suitable, independent, and impartial tribunal.

44.    In light of the importance of this challenge for Claimants and the principle issues of fundamental importance at stake here, Claimants request that this challenge be examined and decided in a Plenary Session of the ICC Court, open to all Court Members.

Claimants reserve the right further to submit additional observations should they receive additional disclosures from the arbitrators or obtain further relevant information.


Yours faithfully,

*White & Case LLP*


**Carolyn B. Lamm**
**Phillip Capper**
**Nicolas Bouchardie**
**Hansel T. Pham**
WHITE & CASE LLP

**Richard McKim Preston**
**Jeffrey M. Hummel**
SEYFARTH SHAW LLP

---

[53]    **Attachment 1**, Letter from Messrs. Manuel Manrique Cecilia, Pietro Salini and Jan-Piet De Nul to the President of the ICC Court dated 12 November 2020, p. 2.

[54]    **Attachment 1**, Letter from Messrs. Manuel Manrique Cecilia, Pietro Salini and Jan-Piet De Nul to the President of the ICC Court dated 12 November 2020, p. 2.

[55]    **Attachment 1**, Letter from Messrs. Manuel Manrique Cecilia, Pietro Salini and Jan-Piet De Nul to the President of the ICC Court dated 12 November 2020.

10

  

**Andrea Carlevaris**
**Giovanni Minuto**
BONNELLI EREDE

**Elliot Geisinger**
**Christopher Boog**
SCHELLENBERG WITTMER

Cc:

**BÄR & KARRER SA**
Pierre-Yves Gunter                          pierre-yves.gunter@baerkarrer.ch
Daria Vernisse                               daria.vernisse@baerkarrer.ch
Anya Marinkovich                            anya.marinkovich@baerkarrer.ch

**KEATING CHAMBERS**
Robert Gaitskell                             rgaitskell@keatingchambers.com

**VON WOBESER Y SIERRA S.C.**
Claus von Wobeser                           cvonwobeser@vwys.com.mx

**WHITE & CASE LLP**
Francis A. Vasquez, Jr.                      fvasquez@whitecase.com
Daniel Garton                                dgarton@whitecase.com
Paul Brumpton                                pbrumpton@whitecase.com
Matthew N. Drossos                          mdrossos@whitecase.com
Angélica André                               aandre@whitecase.com

**ALEMAN, CORDERO, GALINDO & LEE**
Jorge Federico Lee                           jfl@alcogal.com
Anibal Galindo                               agalindo@alcogal.com

**VINSON & ELKINS RLLP**
Nick Henchie                                 nhenchie@velaw.com
James Loftis                                 jloftis@velaw.com
Scott Stiegler                               sstiegler@velaw.com
Susanna Fidoe                                sfidoe@velaw.com
Justine Moxham                               jmoxham@velaw.com
Peter Danysh                                 pdanysh@velaw.com
Louise Woods                                 lwoods@velaw.com
Sophia Burton                                sburton@velaw.com
Ben Grunberger-Kirsh                        bgrunberger-kirsh@velaw.com
Michala Kucharikova                          mkucharikova@velaw.com
Justine Moxham                               jmoxham@velaw.com
Charles Aitchison                            caitchison@velaw.com

**MAYER BROWN**
**INTERNATIONAL LLP**
Raid Abu-Manneh                             rabu-manneh@mayerbrown.com
Kwadwo Sarkodie                             ksarkodie@mayerbrown.com

11

  

| Joseph Otoo | jotoo@mayerbrown.com |
|---|---|
| Michael Cottrell | mcottrell@mayerbrown.com |
| Alejandro Lopez Ortiz | alopezortiz@mayerbrown.com |
| Patricia Ugalde | pugalderevilla@mayerbrown.com |
| George Fischer | gfisher@mayerbrown.com |
| Mark McMahon | mmcmahon@mayerbrown.com |

**ATKINS CHAMBERS BARRISTERS**

| Manus McMullan QC | mmcmullan@atkinchambers.com |
|---|---|
| Peter Land | pland@atkinchambers.com |

**ACP SECTION FOR LEGAL ADVICE ON CONTRACTS, CANAL EXPANSION PROGRAM**

| Carlos Arrue Montenegro | caarrue@pancanal.com |
|---|---|
| Karla Arias | karias@pancanal.com |

12