# **EXHIBIT 71**

  

22 November 2020

**BY EMAIL**

Secretariat of the ICC International Court of Arbitration
33-43 avenue du Président Wilson
75116 Paris
France
ica1@iccwbo.org

Re:   ICC Case No. 22465/ASM/JPA (C-22966/JPA) – (1) Grupo Unidos por el Canal, S.A. ("**GUPC**" or "**Claimant 1**"), (2) Sacyr, S.A., (3) Webuild, S.p.A, (4) Jan De Nul, N.V. ("**Claimants**") v. Autoridad del Canal de Panamá ("**Respondent**" or "**ACP**") (together, the "**Parties**")

Dear Mr. Argentato and Ms. Pinton,

### I.   INTRODUCTION

1.  Pursuant to Article 14 of the ICC Rules, Claimants hereby submit this challenge to Dr. Robert Gaitskell QC, the arbitrator nominated by Respondent, in ICC Case No. 22465/ASM/JPA (C-22966/JPA) (the "**Lock Gates Arbitration**").

2.  As you are aware, Claimants have also submitted challenges to Dr. Gaitskell (and the other tribunal members) in related arbitrations between the Parties, namely ICC Case No. 20910/ASM/JPA (C-20911/ASM) ("**Panama 1**") and ICC Case No. 22466/ASM/JPA (C-22967/JPA) ("**Panama 2**") (together with the Lock Gates Arbitration, the "**Arbitrations**").[1]

3.  For the avoidance of doubt, this challenge in the Lock Gates Arbitration relates solely to Dr. Gaitskell, and Claimants do not challenge the other members of the tribunal, who are Prof. Bernard Audit (President) and Mr. Bernardo Cremades (nominated by Claimants) (together with Dr. Gaitskell, the "**Tribunal**").

4.  With great regret, Claimants are compelled to bring this challenge for reasons that reach beyond this arbitration (and consistently with the challenges in Panama 1 and Panama 2) because the serious issues uncovered with respect to Dr. Gaitskell's conduct in Panama 1 and Panama 2 have entirely undermined Claimants' confidence in Dr. Gaitskell's impartiality and independence in any matter between these Parties. Indeed, Claimants have lost all faith that Dr. Gaitskell can properly discharge his mandate. Dr. Gaitskell must, therefore, be removed from the Lock Gates Arbitration.

5.  In light of the importance of this challenge for Claimants and the issues of principle of fundamental importance at stake here, Claimants request that this challenge be examined and decided in a Plenary Session of the ICC Court, open to all Court Members, at the same time as the challenges brought in Panama 1 and Panama 2.

---

[1]   The Tribunals in Panama 1 and Panama 2 are identical. Other than Dr Gaitskell, the members are Mr. Pierre-Yves Gunter (President) and Mr. Claus von Wobeser (nominated by Claimants).

1

  

**II.   SUMMARY OF THE CHALLENGE TO DR. GAITSKELL**

**A.   APPLICABLE STANDARDS**

6. Claimants refer to their challenges in Panama 1 and Panama 2 of 28 October 2020, and the further submissions of 19 November 2020 (attached herewith), for a full elaboration of the disclosure requirements under the ICC Rules and the U.S. Federal Arbitration Act (being the law of the seat).

7. Under the ICC Rules, arbitrators have to disclose "facts or circumstances which might be of such a nature as to call into question the arbitrator's independence <u>in the eyes of the parties</u>, as well as any circumstances that could give rise to reasonable doubts as to the arbitrator's impartiality".[2] The ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration ("**ICC Note**") also provides a non-exhaustive list of circumstances that arbitrators must consider when assessing whether to make a disclosure[3] and specifies that, "[f]or the scope of disclosures, an arbitrator will be considered as bearing the identity of his or her law firm".[4]

8. In an attempt to justify his failure to disclose information of fundamental importance, Dr. Gaitskell has taken the position that information of such a nature was not expressly listed in the IBA Guidelines.[5] The spirit of the ICC Rules is not, however, that an arbitrator should disclose as little information as possible and do so only on the basis of the examples expressly included in lists described as <u>non-exhaustive</u>. Rather, the ICC Rules require arbitrators to ask themselves at every stage of the proceedings whether they should disclose information that give rise to reasonable doubts <u>in the eyes of the parties</u>, even if they do not personally consider that their independence or impartiality is affected by such circumstances. The ICC Note similarly provides that "[t]he parties have a <u>legitimate interest in being fully informed</u> of all facts or circumstances that may be relevant in their view in order to be satisfied that an arbitrator or prospective arbitrator is and remains independent and impartial or, if they so wish, to explore the matter further and/or take the initiatives contemplated by the Rules."[6] The ICC Note is also clear that "[a]ny doubt must be resolved in favour of disclosure."[7]

9. This is also reflected in U.S. law (the law of the seat of this Arbitration). The Court for the Southern District of Florida thus recently held that "the irreducible minimum requirement … is <u>full disclosure</u>" and that, where there "is any doubt as to whether circumstances of which the arbitrator is aware might create an impression of partiality, [the arbitrator] should disclose those circumstances."[8] Moreover, the position under U.S. law is that arbitrators should conduct a reasonable investigation into potential conflicts.[9] Under the jurisprudence of the

---

[2]   ICC Rules, Arts. 11(2)-(3).
[3]   ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration, p. 5, para. 23.
[4]   ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration, p. 6, para. 28.
[5]   Letter from Robert Gaitskell QC to the ICC Secretariat dated 12 November 2020, p. 3.
[6]   ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration, p. 5, para. 20 (emphasis added).
[7]   ICC Note to Parties and Arbitral Tribunals on the Conduct of the Arbitration, p. 5, para. 21.
[8]   *Metropolitan Delivery Corporation v. Teamsters Local Union*, 769, Not Reported in Fed. Supp., 2019 WL 3752245 (S.D. Fl. 2019) ("the 'the irreducible minimum requirement … is full disclosure.' Cont'l Ins. Co. v. Williams, 1986 WL 20915, at *4 (S.D. Fla. Sept. 17, 1986), aff'd, 832 F.2d 1265 (11th Cir. 1987). This means that where there 'is any doubt as to whether circumstances of which the arbitrator is aware might create an impression of partiality, [the arbitrator] should disclose those circumstances.' Fed. Vending, Inc. v. Steak & Ale of Fla., Inc., 71 F. Supp. 2d at 1249.").
[9]   Restatement on US Law of Int'l Commercial & Investor-State Arbitration (ALI, proposed final draft, 2019).

2

  

Court of Appeals for the Second Circuit, "a failure to either investigate or disclose an intention not to investigate is indicative of evident partiality [under Section 10(a)(2) of the FAA]."[10]

### B. BASES FOR THE CHALLENGE

10. Claimants refer to their challenges in Panama 1 and Panama 2 of 28 October 2020, and the further submissions of 19 November 2020, as they relate to Dr. Gaitskell, for a full elaboration of the bases for their challenge.

11. Upon his nomination in the Arbitrations, the only disclosures that Dr. Gaitskell made concerned his involvement in the parallel arbitrations concerning the Project.[11] Under the circumstances, Claimants did not oppose his confirmation by the ICC Court. The situation of course would have been different, had Claimants known about the circumstances that have now emerged.

12. The information obtained to date (including from Dr. Gaitskell himself) shows that Dr. Gaitskell failed to disclose facts and circumstances calling into question his independence and giving rise to reasonable doubts about his impartiality.

13. In summary, this information has revealed that Dr. Gaitskell has failed to disclose important connections between himself and, on the one hand, other members of the Panama 1 and Panama 2 tribunals and, on the other, counsel for Respondent. These circumstances are highly problematic and call into question Dr. Gaitskell's independence in the eyes of the Claimants, giving rise to reasonable doubts as to his impartiality. As a result, Claimants consider that they have no choice but to seek Dr. Gaitskell's removal from the Lock Gates Arbitration, even though Dr. Gaitskell has not disclosed any connections between himself and the other members of the Tribunal in the Lock Gates Arbitration.[12]

14. In particular, Dr. Gaitskell only recently disclosed (at Claimants' request) that he (as party-nominated arbitrator) nominated Mr. Gunter (the President in Panama 1 and Panama 2) as president in an unrelated ICC case (No. 24400) in August 2019. Claimants' legitimate concerns with respect to this appointment are two-fold: (i) the fact that Mr. Gunter owes his appointment in another case to Dr. Gaitskell creates a connection and a situation of dependence between them, which, Claimants submit, has likely improperly influenced the deliberative process in Panama 1 (and will likely do the same in Panama 2); and (ii) the fact that Mr. Gunter and Dr. Gaitskell sat together in another case throughout the duration of deliberations in Panama 1 means that they had opportunities to discuss the issues at stake in the absence of Claimants' appointee, Mr. von Wobeser, thus improperly influencing the deliberations.

15. Whilst the same connections do not exist in the Lock Gates Arbitration, Dr. Gaitskell's conduct, both with respect to Mr. Gunter's appointment and his failure to disclose it, and failure to conduct a proper conflict check, raise such significant concerns about his independence and impartiality that Claimants have no option but to challenge his appointment in all of the Arbitrations. Importantly, Claimants do not submit that either the President or

---

[10] *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi*, A.S., 492 F.3d 132 (2d Cir. 2007).

[11] Dr. Gaitskell's Statement of acceptance, availability, impartiality and independence in ICC Case No. 20910 dated 26 March 2015, p. 4; Dr. Gaitskell's Statement of acceptance, availability, impartiality and independence in ICC Case No. 20911 dated 15 May 2015, p. 2; Dr. Gaitskell's Statement of acceptance, availability, impartiality and independence in ICC Case No. 22466 dated 27 January 2017.

[12] Save that, as noted at paragraph 11 of Claimants' letter of 28 October 2020, Dr. Gaitskell and Mr. Cremades sat together in a previous Panama arbitration (ICC Case No. 19962), where Mr. Cremades issued a separate and dissenting opinion to that issued by Dr. Gaitskell and Prof. Bernard Hanotiau.

3

  

arbitrator nominated by Claimants in this arbitration is not independent or has been improperly influenced by Dr. Gaitskell, but rather that Dr. Gaitskell, given his past record, may attempt similar conduct in the present arbitration. Claimants' firm belief is that an arbitrator having demonstrated such conduct, in disputes between the same Parties and on the same project, has no place on an international arbitral tribunal deciding disputes between those Parties, as confidence in the independence and impartiality of an arbitrator must be paramount.

16. Dr. Gaitskell has also failed to provide a complete answer to Claimants' disclosure request concerning any personal or professional relationship between him and members of the law firms and chambers, including Atkin Chambers, representing the Parties in this arbitration, including but not limited to whether he serves or has served as arbitrator with, or has been appointed by, members of the law firms and chambers representing the Parties in this arbitration. Indeed, Claimants' own searches have revealed connections that Dr. Gaitskell has failed to disclose.[13] Furthermore, in response to Claimants' Disclosure Requests, Dr. Gaitskell disclosed that Mr. Manus McMullan QC of Atkin Chambers (lead counsel for Respondent) is currently representing a party in an ICC arbitration in which Dr. Gaitskell is the president, having been appointed by the co-arbitrators.[14]

17. Claimants' concerns have been further heightened by Dr. Gaitskell's reluctance to make full disclosures, as he declined to extend his disclosures to other members of his Barristers' Chambers, and his response showed that he had not carried out any conflict checks extending to other members of his Barristers' Chambers when accepting his nomination and completing his Statement of Acceptance, Availability, Impartiality and Independence in any of the Arbitrations, including this one. Dr. Gaitskell acted in this manner despite the England & Wales Bar Council's encouraging arbitrators to disclose relationships with another arbitrator or counsel who is a member of the same barristers' chambers.[15]

### III. THE CHALLENGE IS TIMELY

18. Pursuant to Article 14(2) of the ICC Rules, a challenge must be made "within 30 days from the date when the party making the challenge was informed of the facts and circumstances on which the challenge is based".

19. This challenge is based on the disclosures by Dr. Gaitskell, first received on 24 October 2020 and then subsequently updated and completed on 29 October and 3 November 2020.

20. Given that the full bases for this challenge were not known by Claimants until 3 November 2020 (date of Dr. Gaitskell's last disclosure), the 30-day time limit set out in Article 14(2) of the ICC Rules does not begin to run until that point. There can therefore be no doubt that the present challenge, submitted to the Secretariat in the format prescribed by Article 14(1) of the ICC Rules, is admissible. However, even if time began to run from Dr. Gaitskell's first disclosure on 24 October 2020, which Claimants submit is not the correct interpretation of the ICC Rules, this challenge has still been brought within the time limit.

---

[13] Letter from Claimants to the ICC Secretariat dated 19 November 2020, p. 7, paras. 31-32.

[14] Email from Robert Gaitskell QC to the Parties dated 29 October 2020.

[15] Bar Council of England and Wales, Information Note regarding barristers in international arbitration dated 6 July 2015, p. 5 ("[G]ood practice would dictate that in circumstances where a barrister comes to understand that he or she has been instructed in an arbitration where one or more of the members of the Tribunal are barristers in the same set of chambers, prompt disclosure ought to be made by those instructing the barrister advocate to the legal representatives of the other side. This will ensure as far as possible that the guidance set out in the IBA Guidelines on Conflicts of Interest in International Arbitration is followed (see further below). A failure to make prompt disclosure, could ultimately, lead to a challenge to the independence of the member(s) of the Tribunal in question.").

  

### IV. REQUEST FOR REASONS AND RESERVATION OF RIGHTS

21. In accordance with Section II.D of the ICC Note, Claimants request that the ICC Court communicate the reasons for its decision pursuant to Article 14 of the Rules.

22. In light of the importance of this challenge for Claimants and the issues of principle of fundamental importance at stake here, Claimants request that this challenge be examined and decided in a Plenary Session of the ICC Court, open to all Court Members, at the same time as the challenges in Panama 1 and Panama 2.

23. Claimants reserve the right further to submit additional observations, should they receive additional disclosures from Dr. Gaitskell or obtain further relevant information.

Yours faithfully,

*White & Case LLP*

**Carolyn B. Lamm**
**Phillip Capper**
**Nicolas Bouchardie**
**Elizabeth Oger-Gross**
**James Holden**
WHITE & CASE LLP

**Richard McKim Preston**
**Jeffrey M. Hummel**
SEYFARTH SHAW LLP

**Andrea Carlevaris**
**Giovanni Minuto**
BONNELLI EREDE

**Elliot Geisinger**
**Christopher Boog**
SCHELLENBERG WITTMER

Cc:

Bernard Audit                           baudit@gamil.com

**KEATING CHAMBERS**
Robert Gaitskell                        rgaitskell@keatingchambers.com

**B. CREMADES Y ASOCIADOS**
Bernard Cremades                        bcremades@bcremades.com

**WHITE & CASE LLP**
Matthew Drossos                         mdrosso@whitecase.com
Angelica Andre                          aandre@whitecase.com
Ana Maria Legendre                      ana.maria.legendre@whitecase.com





| | |
|---|---|
| Onur Saka | onur.saka@whitecase.com |
| Tolu Obamuroh | tolu.obamuroh@whitecase.com |
| Grzegorz Goniewicz | grzegorz.goniewicz@whitecase.com |
| Salma Selim | salma.selim@whitecase.com |
| Phoenix Kushner | phoenix.kushner@whitecase.com |
| Anna Chuwen Dai | annachuwen.dai@whitecase.com |
| Fernando Labombarda | fernando.labombarda@whitecase.com |

**BONELLI EREDE**
Antonio Crivellaro — antonio.crivellaro@belex.com

**ALEMÁN, CORDERO, GALINDO & LEE**
| | |
|---|---|
| Mónica Crespo | mcrespo@alcogal.com |
| Jorge Federico Lee | jfl@alcogal.com |
| Anibal Galindo | agalindo@alcogal.com |
| Eduardo Gomez | egomez@alcogal.com |

**VINSON & ELKINS RLLP**
| | |
|---|---|
| Nick Henchie | nhenchie@velaw.com |
| Justine Moxham | jmoxham@velaw.com |
| Stephanie Archer | sarcher@velaw.com |
| Sophie Freelove | sfreelove@velaw.com |

**MAYER BROWN INTERNATIONAL LLP**
| | |
|---|---|
| Raid Abu-Manneh | rabu-manneh@mayerbrown.com |
| Kwadwo Sarkodie | ksarkodie@mayerbrown.com |
| George Fisher | gfisher@mayerbrown.com |

**BOFIL MIR & ALVAREZ JANA**
Andres Jana — ajana@bmaj.cl

**ATKINS CHAMBERS BARRISTERS**
| | |
|---|---|
| Manus McMullan QC | mmcmullan@atkinchambers.com |
| Christopher Lewis QC | clewi@atkinchambers.com |
| Peter Land | pland@atkinchambers.com |

**ACP SECTION FOR LEGAL ADVICE ON CONTRACTS**
| | |
|---|---|
| Carlos Arrue Montenegro | caarrue@pancanal.com |
| Karla G. Arias S. | karias@pancanal.com |

EMEA 129255961